Juan L. DeHERRERA, as the Administrator of the Estate of Mary June Martinez, Deceased, on behalf of her heirs, Appellant (Plaintiff below),

v.

MEMORIAL HOSPITAL OF CARBON COUNTY and Fredrick B. Fishburn, Appellees (Defendants below),

Arturo Archuleta and Jean Archuleta, d/b/a Art's Plumbing and Heating Service, Steve Archuleta, Donald Garcia, Leo Martinez, (Defendants below).

No. 4996.

Supreme Court of Wyoming.

March 5, 1979.

Juan L. DeHerrera, Cheyenne, Philip Whynott, Cheyenne (argued), for appellant.

Weston W. Reeves, of Cardine, Vlastos & Reeves, Casper, for appellee, Memorial Hospital of Carbon County.

Frank D. Neville and Richard L. Williams (argued), of Wehrli & Williams, Casper, for appellee, Fredrick B. Fishburn.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice, delivered the opinion of the court.

Plaintiff, the administrator of the estate of Mary June Martinez, deceased, brought a wrongful death action in district court against defendants, Fredrick B. Fishburn (hereinafter "Fishburn") and Memorial Hospital of Carbon County (hereinafter "Hospital"), for damages resulting from their alleged malpractice. The district court granted a motion for summary judgment by defendants with a declaration that there was no just reason for delay in entering a final judgment. Plaintiff appeals, presenting several vaguely defined issues, but the general question is whether there was a genuine issue as to a material fact, the negative of which is required for a summary judgment. Since we find the existence of a material, genuine factual dispute herein, we reverse.

The decedent was brought to defendant Hospital's emergency room after receiving

an automobile related injury. Defendant Fishburn was called to be the attending physician. In a rather rambling complaint, the plaintiff alleges several acts and failures to act on the part of Fishburn and the Hospital as constituting negligence. The same were denied in the answers of Fishburn and the Hospital. Discovery in the form of interrogatories was made by, and to, all three of the parties to this appeal.

Defendant Fishburn filed his motion for summary judgment on January 24, 1978. It was served on January 23, 1978. Defendant Hospital filed a similar motion on January 23, 1978, and it was served January 20, 1978. Neither motion was accompanied by supporting affidavits, but defendant Fishburn filed an affidavit made by himself in support of his motion on March 20, 1978, serving it on March 17, 1978. In it, he controverted negligence allegations of the complaint, specifically stating, among other things, that:

> "11. It is my opinion that nothing more could have been done for Mary June Martinez while under my care, and that all of the actions which I took in treating Mary June Martinez were medically reasonable and adequate, and no further medical treatment could have been administered that would have saved her life."

Since the hearing on the motions for summary judgment was scheduled for March 31, 1978, the Fishburn affidavit was filed ten days prior to that date.

On the date of the hearing, plaintiff filed an affidavit (there was no certificate of service or indication of service, but it was apparently delivered to opposing counsel at the hearing). The affidavit was dated March 24, 1978, before a Fairfax, Virginia, Notary Public, and it was made by H. Barry Jacobs, who was indicated in the affidavit to be a practicing physician holding an M.D. degree and licensed to practice medicine in the state of Virginia. In it Jacobs stated, among other things, that defendant Fishburn "would have saved" Mary June Martinez's life if he would have taken certain specified medical actions, and in which he stated that proper therapy by defendant

Fishburn "would have prevented the brain stem irreversible damage that occurred."

The two affidavits, then, presented an issue as to the proximate cause of death.

■ In its summary judgment, the district court found that defendant Fishburn's affidavit was timely filed, but that the Jacobs affidavit of plaintiff was not timely filed. The court found, in the alternative, that, even if the Jacobs affidavit were timely filed, it would not have presented competent evidence showing a genuine issue of a material fact because it lacked the necessary foundation to the effect that the affiant was familiar with the standard of care required of a general practitioner, or of a hospital, in the community of Rawlins or in a similar community (the locality rule).

The Jacobs affidavit was not timely served in accordance with the provision of Rule 56(c), W.R.C.P., which provides that the adverse party may serve opposing affidavits "prior to the day of the hearing." Plaintiff acknowledges that such was not timely served.

The answer to the question as to the timeliness of the affidavit of defendant Fishburn is more involved. Rule 56(a) and (b), W.R.C.P., provides that a party may "move with or without supporting affidavits" for a summary judgment. Rule 56(c) of the same rules directs that the determination of the existence or nonexistence of material facts be based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Standing alone, these rules would seem to require that the affidavits be submitted *with* the motion. This was not here done.

However, Rule 6(b), W.R.C.P., provides that (except for enumerated rules which do not include Rule 56):

> "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court, or a commissioner thereof, for cause shown may at any time *in its discretion* (1) with or without motion or notice order the period

enlarged *if request therefor is made* before the expiration of the period originally prescribed or as extended by a previous order or (2) *upon motion made* after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; * * *" (Emphasis added.)

And in subsection (d) of the same rule:
" * * * When a motion is supported by affidavit, the affidavit shall be served with the motion; and * * * opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time."

For the purposes of this case, the fact that the court can exercise its discretion under Rule 6(b) *only if a request to do so is made*, is determinative. The record is devoid of any request by defendant Fishburn for permission to file his late affidavit, either before the expiration of the permissible period or thereafter, on the basis of excusable neglect. The affidavit was therefore not timely. *Nationwide Mutual Insurance Company v. Chantos*, 21 N.C.App. 129, 203 S.E.2d 421 (1974).

To reach this result, it was necessary to resolve the following threshold question in the negative. Do the rules authorize the service of a supporting affidavit at a time subsequent to the service of a motion for summary judgment, but within the time in which such motion may be served?

As indicated, the language of Rule 56(b) that the motion shall be served "with or without" affidavits, standing alone, requires the filing of an affidavit, if there is to be one, *with the* motion. Such is also required by Rule 6(d).

"According to Rule 6(d), any affidavits in support of the summary judgment motion also should be served at the time the motion is served, * * *." 10 Wright and Miller, Federal Practice and Procedure: Civil, § 2719, p. 450.
"If an affidavit is used to support a motion, the affidavit must be served with the motion. * * *" 2 Moore's Federal Practice, ¶ 6.11, p. 1500.163 (2d Ed.).

" * * * If the party seeking summary judgment desires to use affidavits, he should serve supporting affidavits that meet the testimonial requirements of Rule 56(e) with his motion. * * *" 6 Moore's Federal Practice, ¶ 56.14[1], p. 56–358 (2d Ed.).

See *Canning v. Star Publishing*, (Del.) 19 F.R.D. 281 (1956); and *Price v. Hal Roach Studios, Inc.*, S.D.N.Y., 400 F.Supp. 836 (1975).

The rule is, of course, subject to the provisions that out-of-time filing, both of the affidavits in support of the motion for summary judgment and of that in opposition thereto, may be made in discretion of the trial court—if request is made to the court for such. *Dabney v. Cunningham* (E.D.Va.) 317 F.Supp. 57 (1970); and *Woods v. Allied Concord Financial Corporation (Delaware)* (5th Cir. 1967), 373 F.2d 733. And if the court does not abuse its discretion in granting or denying the request. *Alghanim v. Boeing Company* (9th Cir. 1973), 477 F.2d 143.

" * * * Original rule 6(b) expressly provided that the court may not enlarge the times for serving opposing affidavits prescribed in Rule 59(c) except as stated in that rule. Amended Rule 6(b) now makes the time periods prescribed in Rule 59(c) subject to enlargement. * * *" 2 Moore's Federal Practice, ¶ 6.11, p. 1500.163 (2d Ed.).

Similar language is in 6 Moore's Federal Practice, ¶ 56.14[1], supra. It is by virtue of the discretion of the trial judge that motions to dismiss become motions for summary judgment under Rule 12(b), W.R.C.P., and it is likewise when supplemental or additional affidavits are allowed under Rule 56(e), W.R.C.P., once affidavits are properly submitted.

■ Since both affidavits were untimely, the question as to the existence of genuine issues of material fact, if any, must be determined from the other portions of the record. The allegations of the complaint denied by the answers, without more, establish several issues of fact. The interrogatories and the answers thereto contain only

one reference which might be taken to eliminate a disagreement over the vital issue of proximate cause. In response to interrogatories by defendant Hospital requesting a listing of the "procedures, diagnostic efforts or treatment, which the physician should have performed" and which "if she had received * * * for this injury, she would not have died" as alleged in the complaint, plaintiff responded "only God knows what whould [sic] have prevented the death of Mary June Martinez."

This could be interpreted to mean that plaintiff was without evidence to establish proximate cause. This interpretation is buttressed by the fact that the answer came, not from a layman, but from the attorney for the plaintiff.

However, the answer has elements of artificiality and avoidance in it; and, inasmuch as we do not approve such in court matters, we are reluctant to decide important issues on statements containing such elements. This, coupled with the proposition that we must consider a review of a summary judgment from the viewpoint favorable to the party opposing it, we can not conclude that there is not a genuine issue as to the facts concerning proximate cause and as to other facts material to this action. *Timmons v. Reed*, Wyo., 569 P.2d 112 (1977); *Bluejacket v. Carney*, Wyo., 550 P.2d 494 (1976).

Appellees' reliance upon *Keller v. Anderson*, Wyo., 554 P.2d 1253 (1976) for the proposition that the burden of proof or of going forward with reference to establishing issues of fact is initially upon the plaintiff in a malpractice suit is misplaced. The court there held that the plaintiff's affidavits were inadequate in addressing the ultimate facts of the case. The *Keller* case does not establish a different standard in the area of burden of proof or going forward for malpractice actions than otherwise exists. The general rule is as stated in *Mealey v. City of Laramie*, Wyo., 472 P.2d 787, 792 (1970):

"It must be remembered that the burden is on the movant to demonstrate clearly that there was no genuine issue of mate-

rial fact and that movant is entitled to judgment as a matter of law, [citations]. This is so regardless of which party would have the burden of proof at the trial, [citations]. If, however, the movant has adequately supported the motion to the point of demonstrating that the issue tendered by the opposing party is frivolous or a sham, [citations] then 'a burden,' [citations] is cast upon the opposing party to come forward as required by Rule 56(e), W.R.C.P."

Also see *Kover v. Hufsmith*, Wyo., 496 P.2d 908 (1972); and *Greenough v. Prairie Dog Ranch, Inc.*, Wyo., 531 P.2d 499 (1975).

As said in *Holl v. Talcott*, Fla., 191 So.2d 40, 46 (1966):

" * * * [S]ummary judgment procedures should be applied with special caution in negligence actions. [Citations]. This is particularly true in malpractice suits where, as here, the attending facts are peculiarly within the knowledge of the movants and the showing of negligence is generally dependent upon expert testimony as to the standard of care required and observed."

Since we hold the summary judgment to be improper, the contention that the motion for summary judgment was addressed to the complaint and not to the amended complaint is not material. However, we note that the only changes in the amended complaint were (1) to delete the reference in paragraph 4 to the fact that defendants David Garcia, Steve Archuleta, and Leo Martinez "were on a joint venture" in the automobile involved in the incident; (2) to add "Vogel, M.D.—amount unknown" as an item of special damages; (3) to add a paragraph under the claim against Arturo and Jean Archuleta alleging knowledge by them of previous accidents involving their son, Steve, to whom they entrusted the automobile involved in the incident; and (4) to add the words "including punitive relief" to the prayer. The changes therefore did not concern the claim for relief against the defendants involved in this appeal.

With reference to a possible distinction between the position of defendant Fishburn

and that of defendant Hospital, the complaint alleges defendant Fishburn to be a member of the staff of defendant Hospital and that he was "acting as Defendant Hospital's agent and employee and performing within the scope and course of that agency and employment, and within the scope of his position as a member of the Defendant Hospital Staff." In their answers, defendants Fishburn and Hospital denied the allegations. The only reference to this allegation in the interrogatories and the answers thereto, is an affirmative answer by defendants Fishburn and Hospital to plaintiff's question as to whether or not defendant Fishburn was a member of the staff of defendant Hospital on June 6 and 7, 1976. Since there is an issue as to the fact of employment which may involve the application of the doctrine of respondeat superior, defendant Hospital's position with reference to the summary judgment cannot be different than that of defendant Fishburn.

Reversed.

ROONEY, Justice, separate opinion, with whom RAPER, C. J., joins.

Although the foregoing is determinative of this case, I believe it proper to address the application of the so-called "locality rule" inasmuch as I believe the record indicates the probability that the question will arise again in connection with the trial of this matter.[1] Justices McClintock, Thomas, and Rose do not agree with my belief and feel that discussion of the "locality rule" is unnecessary to the disposition of the case. They do not join herein for that reason.

The so-called "locality rule" was an alternate premise upon which the summary judgment was granted. The rule is to the effect that an opinion concerning the propriety of medical action taken by a physician must be prefaced by a showing of knowledge of the standards of practice in the community in which the physician practices, since a rural community, for example, did not have the equipment, opportunities for consultation and learning, and facilities afforded by large cities. Although the rule may have been premised upon an acceptable basis at one time, it is now without logical basis in view of availability of modern communication methods whereby mechanical readings of body functions and reactions can be transmitted immediately to other centers for reading and diagnosis, available telephonic consultations, widespread dissemination of medical literature, and means of rapid transportation. This is not to say that testimony as to the standards in a similar community and the availability and use of modern communication and transportation methods are not to be considered in determination of the existence or nonexistence of negligence, but they should be merely one of the factors to be considered in making this determination, and not a single controlling factor. Negligence cannot be excused on the ground that others in the same locality practiced the same kind of negligence. *Hundley v. Martinez*, 151 W.Va. 977, 158 S.E.2d 159 (1967); *Pederson v. Dumouchel*, 72 Wash.2d 73, 431 P.2d 973 (1967). This is said in full recognition of the statements made by this court in *Govin v. Hunter*, Wyo., 374 P.2d 421 (1962).

---

1. In such instance, " * * * it is our right, if it is not our duty, to decide the question."

*Chicago & N. W. Ry. Co. v. City of Riverton*, 70 Wyo. 119, 127, 247 P.2d 660, 663 (1952).